UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FMC CORPORATION,

                                        Plaintiff,

        v.                                                      **DECISION AND ORDER**
                                                                14-CV-487S

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

                                        Defendant.

## I. INTRODUCTION

In this action, Plaintiff FMC Corporation seeks a declaration of rights and obligations in connection with an environmental remediation project in Middleport, New York. Presently before this Court is Defendant United States Environmental Protection Agency's ("EPA") Motion to Dismiss FMC's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  (Docket No. 7.)  For the following reasons, EPA's motion is granted, and FMC's complaint is dismissed for lack of subject-matter jurisdiction.

## II. BACKGROUND

This Court assumes the truth of the following factual allegations contained in FMC's complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

FMC is a Delaware corporation, with its principal place of business in Philadelphia, Pennsylvania. (Complaint, ¶ 13.) It is registered to conduct business in New York and operates a pesticide facility in Middleport, New York. (Complaint, ¶ 13.) Pertinent here, FMC is engaged in the cleanup of soil that contains elevated levels of arsenic from FMC's previous industrial activity. (Complaint, ¶ 1.) These efforts are aimed at remediating soils found to contain arsenic in concentrations exceeding the range or distribution of naturally occurring arsenic found in unpolluted comparison samples, i.e., soils unaffected by previous industrial activity. (Complaint, ¶ 1.)

In early October 1990, the EPA and the New York State Department of Environmental Conservation ("NYSDEC") delivered a draft unilateral order to FMC that directed FMC to assess, characterize, and, if necessary, remediate historic contamination at its facility and affected off-site areas. (Complaint, ¶¶ 2, 18.) This order was premised under the authority of section 3008(h) of the Resource Conservation and Recovery Act ("RCRA"), and section 71-2727(3) of the New York State Environment Conservation Law ("NYECL"). (Complaint, ¶ 19.)

One month later, FMC formally responded to the EPA and requested a hearing under section 3008(h) of RCRA. (Complaint, ¶ 20.) That hearing was then postponed while FMC, EPA, and NYSDEC engaged in settlement discussions. (Complaint, ¶ 20.) Those discussions lasted nearly a year, culminating in a written Administrative Order on Consent ("AOC") agreed to among FMC, EPA, and NYSDEC. (Complaint, ¶¶ 2, 21.) The AOC settled the administrative enforcement action that had commenced with the draft unilateral order. (Complaint, ¶ 2.)

2

The AOC established "the terms on which FMC would implement interim corrective measures, an initial study of the need for further corrective measures . . . and a study of the nature of final corrective measures . . . for the Facility and off-site areas." (Complaint, ¶ 21.)  The AOC contemplates that a corrective measures study ("CMS") would contain an evaluation of corrective measure alternatives based on specific criteria set forth in the AOC and corrective action objectives ("CAOs") to be developed after execution of the AOC.  (Complaint, ¶ 22.)  Additionally, the AOC provides that the CMS report would include a recommended corrective measure alternative as the final corrective action.  (Complaint, ¶ 22.)  The AOC also provides that EPA would "select the corrective measure alternative or alternatives to be implemented based upon the results of FMC's work."  (Complaint, ¶ 23.)

Since 1991, FMC, EPA, and NYSDEC have followed the corrective action process set forth in the AOC.  (Complaint, ¶ 26.)  For example, FMC implemented seven interim corrective measures at some 37 properties within certain contaminated sites—known as operable units 2, 4, and 5—with EPA's and NYSDEC's oversight and approval.  (Complaint, ¶ 27.)  Operable units 2, 4, and 5 are all outside FMC's facility and consist of many residential properties, several commercial properties, undeveloped properties, the "Culvert 105 area," and the Royalton-Hartland school.  (Complaint, ¶ 3.)

In addition to the interim corrective measures, FMC also performed RCRA facility investigations for operating units 2, 4, and 5, consisting of environmental sampling and other investigative measures designed to determine the nature and extent of contamination.  (Complaint, ¶ 29.)  FMC then submitted summaries of the findings to EPA and NYSDEC.  (Complaint, ¶ 29.)

Thereafter, in 2008, EPA and NYSDEC began consulting with FMC regarding the development of corrective action objectives ("CAOs").  (Complaint, ¶ 30.)  In March 2009, EPA and NYSDEC adopted a final set of CAOs to govern work under the AOC. (Complaint, ¶ 30.)

In September 2009, EPA and NYSDEC approved FMC's RCRA facility investigation summaries.  (Complaint, ¶ 31.)  Based on the information in the summaries, EPA and NYSDEC determined that a corrective measures study was warranted for, among other areas, operating units 2, 4, and 5.  (Complaint, ¶ 31.)  The corrective measures study was intended to develop and evaluate a corrective measure alternative or alternatives and to recommend the final corrective measure or measures for operating units 2, 4, and 5.  (Complaint, ¶ 31.)  Upon completion of the corrective measures study, the AOC provided that EPA would select the corrective measures to be taken based on the corrective measures study analysis and report.  (Complaint, ¶ 33.)

FMC, EPA, and NYSDEC worked together to formulate a corrective measures work plan for operating units 2, 4, and 5, namely the "Corrective Measures Study Work Plan for Suspected Air Deposition and Culvert 105 Study Areas" ("Final CMS Work Plan").  (Complaint, ¶ 34.)  FMC completed the corrective measures study in accordance with the Final CMS Work Plan.  (Complaint, ¶ 35.)  It then submitted a preliminary report to EPA and NYSDEC, which, after a comment and revision period, became the Final Corrective Measures Study Report containing more than 10,000 pages.  (Complaint, ¶ 35.)  This final report evaluated eight corrective measures alternatives developed by FMC with input and direction from EPA and NYSDEC, as well

as from community stakeholders.  (Complaint, ¶ 36.)  FMC believed that EPA would select a final remedy from one of these eight options, in accordance with the AOC.

But on June 11, 2012, NYSDEC, not EPA, published a Draft Statement of Basis, which purported to select the final remedy for operating units 2, 4, and 5, which was not one of the eight options contained in the Final Corrective Measures Study Report. (Complaint, ¶¶ 37, 38.)   Instead, the NYSDEC's remedy is based on state law. (Complaint, ¶ 50.)  That remedy is referred to in this litigation as CMA 9.

FMC objects to CMA 9 not only because it is procedurally contrary to the AOC but also because the selected remedy was never studied or considered under the AOC and is a more expensive, less desirable option than any of the eight studied remedies. (Complaint, ¶¶ 4, 5, 6.)   NYSDEC issued a Statement of Basis on May 28, 2013, announcing CMA 9 as the final corrective measure for operable units 2, 4, and 5. (Complaint, ¶ 50.)

FMC unsuccessfully pursued its objections administratively with EPA and NYSDEC.  (Complaint, ¶¶ 40–42, 49.)  After NYSDEC issued the Statement of Basis, FMC continued discussions with NYSDEC in an attempt to find mutual agreement on a final remedy.  (Complaint, ¶ 51.)  Those discussions were also unsuccessful, which resulted in FMC petitioning EPA to set aside the Statement of Basis for several reasons. (Complaint, ¶¶ 52, 53.)  EPA, however, declined to consider FMC's petition in a May 22, 2014 letter, finding that FMC could not properly invoke the dispute-resolution provisions in the AOC, because those provisions do not cover selection of the final corrective measure.  (Complaint, ¶ 56.)  Thereafter, FMC commenced an Article 78 proceeding in state court to review NYSDEC's actions.  (Complaint, ¶ 58.)

FMC also brings this action seeking a declaration of the rights and obligations of FMC and EPA under the AOC.  In its five claims for relief, FMC requests that this Court declare:

1) that the AOC governs selection of the corrective measure alternatives for the Middleport Corrective Action Site (Complaint, ¶ 68);

2) that EPA will select the corrective measure alternative or alternatives and that the selection must be based upon the results of Tasks IX and X conducted under the AOC . . . [and] that the standards for that selection are those provided by the agreed standards of the AOC, the CAOs, and RCRA, not state law or guidance (Complaint, ¶¶ 74, 75);

3) that EPA must resolve FMC's May 1, 2014 Notice of Dispute on the merits (Complaint, ¶ 81);

4) that the Statement of Basis did not select CMA 9 under the standards promised by EPA in the AOC, and that the selection of CMA 9 does not satisfy the AOC or RCRA (Complaint, ¶ 86);

5) that EPA's selection of CMA 9 by inaction is arbitrary, capricious, an abuse of discretion, and contrary to law (Complaint, ¶ 93).

## III. DISCUSSION

### A.    Motion to Dismiss Standards

### 1.    Rule 12 (b)(1)

The plaintiff, as the party seeking to invoke the court's jurisdiction, bears the burden of demonstrating proper subject-matter jurisdiction.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936); Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996).  In turn, a defendant may assert lack of subject-matter jurisdiction as a defense under Rule 12(b)(1), which permits dismissal

of an action if the "district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In assessing a Rule 12(b)(1) motion, the court accepts as true all material factual allegations in the complaint, but does not draw inferences favorable to the party asserting jurisdiction.  See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Svcs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  The court may also consider affidavits and other materials beyond the pleadings, but may not rely on conclusory or hearsay statements.  See J.S., 386 F.3d at 110.

### B.     Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."   Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  Goldstein, 516 F.3d at 56; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570).   Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949.   The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.   Id. at 1950; FED. R. CIV. P. 8(a)(2).   Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).   This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.   First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See Iqbal, 129 S. Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.      Subject-matter Jurisdiction**

When a defendant moves to dismiss for lack of subject-matter jurisdiction, as well as on other grounds, the court must first resolve whether it has proper jurisdiction to consider the merits of the case, since all else becomes moot if jurisdiction is lacking. See Rhulen Agency v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); Carney v. Swanson, Case #15-CV-1060-FPG, 2016 WL 7450459, at *2 (W.D.N.Y. Dec. 28, 2016); Miller v. Geidel, No. 1:13-CV-90 (MAT), 2016 WL 7325140, at *2 (W.D.N.Y. Dec. 16, 2016).

The United States, as sovereign, cannot be sued without its consent.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 769, 85 L. Ed. 1058 (1941). Thus, "[i]n any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity."  Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999); see also Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) ("[w]hen an action is brought against the United States government," waiver of "sovereign immunity is necessary for subject matter jurisdiction to exist."); Meyer, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

Any waiver of the United States' sovereign immunity must be unequivocally expressed in a statute and must be strictly construed in favor of the United States.  See United States v. Nordic Vill., 503 U.S. 30, 33-34, 112 S. Ct. 1011, 1014-15, 117 L. Ed. 2d 181 (1992); Presidential Gardens, 175 F.3d at 139.  The sovereign immunity of the

United States extends to federal agencies.  See Meyer, 510 U.S. at 475; Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

FMC asserts three grounds for subject-matter jurisdiction in its complaint.[1] (Complaint, ¶¶ 15, 16.)  First, it invokes the federal-question statute, 28 U.S.C. § 1331, but this statute does not give rise to subject-matter jurisdiction because it "is in no way a general waiver of sovereign immunity."  Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980); see also Mack v. United States, 814 F.2d 120, 122 (2d Cir. 1987) (noting that § 1331 does not waive sovereign immunity).

FMC next invokes the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, et seq., but this statute similarly fails as a basis for jurisdiction because it is a procedural vehicle, not an independent basis for subject-matter jurisdiction.  See Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d Cir. 2006) (finding that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts"); In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1992) (noting that the Declaratory Judgment Act does not "provide an independent cause of action," and that its "operation is procedural only---to provide a form of relief previously unavailable"); Schutte Bagclosures, Inc. v. Kwik Lok Corp., 48 F. Supp. 3d 675, 688-89 (S.D.N.Y. 2014) ("for subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the

---

[1] FMC asserts a fourth ground for subject-matter jurisdiction and waiver of sovereign immunity in its response papers, that being under 42 U.S.C. §§ 6928 (h) and 6972 (a)(1), provisions of the Resource Conservation and Recovery Act ("RCRA").  FMC did not, however, include these purported grounds as jurisdictional bases in its complaint.  See Troy v. City of New York, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014), aff'd, 614 Fed.Appx. 32 (2d Cir. 2015) (finding that "it is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss'") (citations omitted). In any event, FMC has not persuasively established, legally or factually, that either of these provisions apply in this action.

jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found").

Finally, FMC relies on the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, et seq., together with 28 U.S.C. § 1331, as a basis for jurisdiction. The APA "waives sovereign immunity for suits against the United States for relief other than money damages." Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 803 (2d Cir. 2015); see also Lunney v. United States, 319 F.3d 550, 557-58 (2d Cir. 2003) ("The APA is not an independent grant of subject matter jurisdiction . . . . Rather, it waives the federal government's sovereign immunity in actions brought under the general federal questions jurisdictional statute."). Thus, the existence of subject-matter jurisdiction and a proper waiver of sovereign immunity depend on whether FMC's claims are reviewable under the APA.

### 1. Claims 1-4

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. But the APA confers no authority "to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; see also 5 U.S.C. § 701(a)(1) ("This chapter applies, according to the provisions thereof, except to the extent that statutes preclude judicial review.").

FMC's first four causes of action assert non-monetary contract claims arising out of the AOC. Contract claims against the United States implicate the Tucker Act, 28

U.S.C. §§ 1346(a)(2) and 1491, which waives the sovereign immunity of the United States as to contract claims, but vests the Court of Federal Claims with exclusive jurisdiction, unless the claims do not exceed $10,000, in which case there is concurrent jurisdiction in the federal district courts. See 28 U.S.C. § 1491; 28 U.S.C. § 1346(a)(2). The Second Circuit has found that this statutory scheme bars all forms of recovery for contract claims against the United States in the district courts, except as provided in 28 U.S.C. § 1346(a)(2), holding that "[w]here a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims." Presidential Gardens, 175 F.3d at 143 (quoting Estate of Watson v. Blumenthal, 586 F.2d 925, 933-34 (2d Cir. 1978)); accord Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 (2d Cir. 1999) (per curiam).

FMC contends that the Tucker Act bars specific-performance or equitable claims only if they mask an underlying objective to obtain money from the United States. Although some cases discuss the Tucker Act in that context, see, e.g., B.K. Instrument, Inc. v. United States, 715 F.2d 713, 727 (2d Cir. 1983) (discussing the Tucker Act as barring equitable claims "where the prime objective of the plaintiff is to obtain money from the Government"), the Tucker Act is not so limited. As noted above, the Second Circuit has held without limitation that "[w]here a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims." Presidential Gardens, 175 F.3d at 143 (citation omitted); see also New York v. Sebelius, No. 1:07-CV-1003 (GLS/DRH), 2009 WL 1834599, at *10 (N.D.N.Y. June 22, 2009) (applying the rule from Presidential Gardens); Rose v. Associated Univs., Inc., No. 00 CIV. 0460 (DAB), 2000 WL 1457115, at *2 (S.D.N.Y.

2000) (applying the rule from <u>Presidential Gardens</u>); <u>cf.</u> <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 921, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) (Scalia, J., dissenting) ("It is settled that sovereign immunity bars a suit against the United States for specific performance of a contract . . . and that this bar was not disturbed by the 1976 amendment to § 702.") (citations omitted).

This is consistent with sovereign immunity principles, which the Supreme Court has explained as follows:

> It is argued that the principle of sovereign immunity is an archaic hangover not consonant with modern morality and that it should therefore be limited wherever possible. There may be substance in such a viewpoint as applied to suits for damages. The Congress has increasingly permitted such suits to be maintained against the sovereign and we should give hospitable scope to that trend. But the reasoning is not applicable to suits for specific relief. For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The government as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right.

<u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 703-04, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949).

FMC's first four causes of action do not fall within this Court's limited jurisdiction over contract claims against the United States. <u>See</u> 28 U.S.C. § 1346(a)(2). And since the United States has waived its sovereign immunity relating to contract claims only as set forth in the Tucker Act, this Court lacks subject-matter jurisdiction. <u>See</u> <u>Presidential Gardens</u>, 175 F.3d at 143; <u>Up State</u>, 198 F.3d at 375 (relying on <u>Presidential Gardens</u>

and noting that claims arising out of a contract with the United States fall within the exclusive jurisdiction of the Court of Federal Claims); Sebelius, 2009 WL 1834599, at *10 (finding that the waiver of sovereign immunity set forth in the APA cannot be relied upon in the context of a contractually based claim against the federal government); Serra v. United States Gen. Servs. Admin., 667 F. Supp. 1042, 1050 (S.D.N.Y. 1987) ("The Tucker Act provides exclusive federal jurisdiction, but not in the district court, for contract actions against the United States and, whatever its limitations, represents the judgment of Congress that contract actions may be brought against the United States, but only as provided for in that statute.").   Consequently, the APA cannot serve as a basis for subject-matter jurisdiction or waiver of sovereign immunity and FMC's first four causes of action must be dismissed.  See 5 U.S.C. § 702 (APA confers no authority "to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."); 5 U.S.C. § 701(a)(1) (APA does not apply to the extent that statutes preclude judicial review.)

### 2.  Claim 5

FMC's fifth cause of action does not arise out of the AOC, but rather, asserts a more traditional APA claim:   that EPA's selection of CMA 9 by inaction is arbitrary, capricious, an abuse of discretion, and contrary to law.  (Complaint, ¶ 93.)

"The APA provides the procedural framework for private suits challenging determinations made by federal agencies . . . where the party has 'suffered legal wrong' as the result of 'final agency action.'"  Acquest Wehrle, LLC v. United States, 567 F. Supp. 2d 402, 409 (W.D.N.Y. 2008) (citing 5 U.S.C. §§ 702, 704; Lujan v. Nat'l Wildlife

Fed'n, 497 U.S. 871, 882-83, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) and Se. Alaska

Conservation Council v. U.S. Army Corps of Eng'rs., 486 F.3d 638, 643 (9th Cir. 2007)).

Section 702 of the APA "permits a party to bring an equitable claim challenging arbitrary

and capricious action of an administrative agency in federal district court and waives the

government's sovereign immunity with respect to such claims in that forum." Up State,

198 F.3d at 375; see also Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991).   Agency

action is defined as including "the whole or part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551 (13)

(incorporated through 5 U.S.C. § 701(b)(2)).

Judicial review is limited to "agency action made reviewable by statute" and "final

agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

The APA's requirement that agency action be final is jurisdictional.   See Acquest

Wehrle, 567 F. Supp. 2d at 409.  Agency action is final if it (1) marks the consummation

of the agency's decisionmaking process, and (2) is one by which rights or obligations

have been determined or from which legal consequences will flow.   See U.S. Army

Corps. of Eng'rs. v. Hawkes Co., Inc., __ U.S. __, 136 S. Ct. 1807, 1813, 195 L. Ed. 2d

77 (2016) (citing Bennett v. Spear, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 137 L. Ed.

2d 281 (1997)).  The "core question" concerning finality is "whether the agency has

completed its decisionmaking process, and whether the result of that process is one

that will directly affect the parties."  Lunney, 319 F.3d at 554 (quoting Dalton v. Specter,

511 U.S. 462, 470, 114 S. Ct. 1719, 128 L. Ed. 2d 497 (1994)).   Agency action

committed to agency discretion by law is not subject to judicial review under the APA.

See Marlow v. U.S. Dep't of Educ., 820 F.2d 581, 582 (2d Cir. 1987).

EPA argues that Claim 5 must be dismissed for lack of jurisdiction because it does not properly fall under the APA.  In particular, EPA maintains that the May 22, 2014 letter is not a final agency action, because it does not change FMC's legal rights or obligations and carries no legal consequences, and therefore, review cannot lie under the APA.  FMC counters that the May 22, 2014 letter constitutes final agency action because it worked a "legal wrong" in the sense that FMC lost what it contends was the benefit of the bargain---that EPA would select a corrective measure from among the eight studied remedies.  FMC thus argues that the effect of the May 22, 2014 letter is to deprive it of obtaining a remedy selected based on the criteria set forth in the AOC.

Having reviewed the May 22, 2014 letter in detail, this Court concludes that FMC has not established that it constitutes final agency action within the meaning of the APA.  See Scelsa, 76 F.3d at 40 (providing that the party seeking to invoke the court's jurisdiction bears the burden of proving it).  FMC alleges that "[b]y letter dated May 22, 2014, USEPA declined to consider FMC's dispute over selection of CMA 9 as the final corrective measure for OUs 2, 4, and 5 on the ground that the AOC did not cover selection of the corrective measure, that it has 'closed' with respect to OUs 2, 4, and 5, and that therefore FMC could not invoke the dispute resolution provisions of the AOC with respect to its dispute over the Statement of Basis."  (Complaint, ¶ 56.)

As alleged, the letter expresses EPA's determination that FMC's Notice of Dispute was not subject to the dispute-resolution provisions of the AOC.  It does nothing, however, to change FMC's legal rights or obligations, nor does it carry any discernable legal consequences.  And FMC points to none.  The best it musters is that

the *effect* of the letter is to prevent it from obtaining a remedy selected based on the work done and the agreed criteria under the AOC.  But this *effect* does not amount to a legal consequence.  See, e.g., Nat'l Ass'n of Homebuilders v. Norton, 415 F.3d 8, 15 (D.C. Cir. 2005) ("if the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review").  In addition, FMC has not demonstrated that there is "no other adequate remedy in a court," 5 U.S.C. § 704, particularly in light of its allegation that it commenced an Article 78 proceeding in state court to challenge NYSDEC's actions, where it presumably will challenge NYSDEC's selection of a remedy that does not comport to the AOC.[2] (Complaint, ¶ 58.)

It bears noting too that FMC agreed in the AOC that, with exceptions not pertinent here, "no action or decision by EPA pursuant to this Order . . . shall constitute final agency action giving rise to any rights of judicial review prior to EPA's initiation of a judicial action for a violation of this Order . . .."  Since EPA has not initiated a judicial action to this Court's knowledge, the AOC itself precludes a finding of final agency action here.  (AOC, Docket No. 1-2, pp. 75, 77.)

Because final agency action is a jurisdictional requirement, and because it is absent here, Claim 5 must be dismissed for lack of subject-matter jurisdiction.[3]

---

[2] FMC confirms in supplemental briefing that it challenged NYS DEC's remedy selection in the Article 78 proceeding and that a decision was recently rendered in that action.  See FMC Corp. v. N.Y.S. Dep't of Envtl Conservation., 143 A.D.3d 1128, 1131 (N.Y. App. Div. 2016).  FMC has not demonstrated any bar to it pursuing in the continuing state court action its claim that NYDEC had to use certain criteria from the AOC in selecting a remedy.

[3] Since this Court finds subject-matter jurisdiction lacking for each of FMC's claims, it need not resolve EPA's standing and failure-to-state-a-claim arguments. See Rhulen Agency, 896 F.2d at 678; Carney, 2016 WL 7450459, at *2; Miller, 2016 WL 7325140, at *2.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that it lacks subject-matter jurisdiction over FMC's claims.  Dismissal of the complaint is therefore required.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED as moot.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        January 31, 2017
              Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M.  SKRETNY
                                      United States District Judge